UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROOSEVELT KIRK,

      Petitioner,

v.                                                                      Case No. 5:23cv105-TKW-HTC

RICKY DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Roosevelt Kirk, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 raising a single ground for relief - that the circuit court violated the Eighth Amendment when it resentenced him to life *with parole*. Doc. 1. After considering the petition, the record, Doc. 7, the Secretary's response, Doc. 16, and Kirk's reply, Doc. 20, the undersigned finds the petition should be DENIED without an evidentiary hearing.

## I.   RELEVANT LEGAL AND FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 1983, when Kirk was 15 years old, he was charged in Bay County Circuit Court case number 1983 CF 988 with first-degree murder and armed robbery arising out of the cold-blooded murder of a store clerk.[1] Kirk eventually pled guilty to both charges in exchange for the State's promise not to seek the death

---

[1] For a more detailed factual background, *see Kirk v. State*, 339 So. 3d 1043 (Fla. 1st DCA 2022), *reh'g denied* (June 20, 2022).

penalty and his sworn testimony against a co-defendant, Harry Glen Gillespie, Jr., who was 18 years old at the time of the robbery and murder. In September 1984, Kirk was sentenced to life in prison *with* the possibility of parole for the murder and a concurrent term of twenty-five years in prison for the robbery. On the day Kirk was sentenced, he escaped from the custody of the Bay County Sheriff's Office. After being recaptured, Kirk was sentenced in Bay County Circuit Court case number 1984 CF 1398 to five years in prison, to run consecutively to the sentence in 1983 CF 988. He did not appeal these judgments and sentences.

In November 2015, Kirk filed a Florida Rule 3.850 post-conviction motion, Doc. 7-4 at 8, arguing his parole-eligible life sentence violated the Eighth Amendment and seeking to be resentenced under *Miller v. Alabama*, 567 U.S. 460 (2012).[2] The circuit court denied the motion, finding *Miller* to be inapplicable because "Defendant was sentenced to life in prison *with the possibility of parole after 25 years*, while *Miller* applies only to sentences involving life without the possibility of parole." Doc. 7-4 at 27 (emphasis in original).

Kirk appealed, and the First District Court of Appeal ("First DCA") reversed the circuit court's denial of relief. *See Kirk v. State*, 210 So. 3d 769, 769 (Fla. 1st DCA Feb. 16, 2017). The First DCA did so because the circuit court relied on the

---

[2] As discussed in detail herein, in *Miller*, the United States Supreme Court held that the Eighth Amendment prohibits a mandatory sentence of life without the possibility of parole for a juvenile convicted of a homicide offense.

Florida Supreme Court's decision in *Atwell v. State*, 128 So. 3d 167 (Fla. 2013) ("*Atwell I*"), a case in which the court held that a life sentence with the possibility of parole for a juvenile defendant (as opposed to a life without parole sentence) did not violate the Eighth Amendment.   However, as the First DCA noted, the Florida Supreme Court quashed *Atwell I* during the pendency of Kirk's appeal.  *See Atwell v. State*, 197 So. 3d 1040, 1041 (Fla. 2016) ("*Atwell II*").

In *Atwell II*, the Florida Supreme Court held a juvenile defendant's life sentence *with* parole violates the Eighth Amendment because, "based on the way Florida's parole process operates under the existing statutory scheme," such a sentence "actually resembles a mandatorily imposed life sentence without parole that is not 'proportionate to the offense and the offender.'"  *Id.* at 1048 (citation omitted). Based on this change in the law, the First DCA remanded the case to the circuit court to (1) determine whether Kirk was a juvenile when he committed the murder and (2) if so, resentence Kirk "in conformance with chapter 2014–220, Laws of Florida, which has been codified in sections 775.082, 921.1401, and 921.1402, Florida Statutes."[3]  *Kirk v. State*, 210 So. 3d at 769.

---

[3] The Florida Legislature enacted Chapter 2014–220, codified in Fla. Stat. §§ 775.082, 921.1401, and 921.1402, to bring Florida's juvenile sentencing statutes into compliance with *Graham* and *Miller*.  Although the legislation became effective July 1, 2014, it also applies to juvenile offenders who committed their crimes before July 1, 2014, and whose sentences violate *Miller*.  *See Horsley v. State,* 160 So. 3d 393, 395 (Fla. 2015) (rejecting state's argument that the only permissible sentences for such an offender are life without parole or life with parole after 25 years, through a revival of a 20-year-old sentencing statute).  Unlike the prior version of § 775.082, the 2014 version does not provide for parole eligibility for juvenile offenders.  *See* Fla. Stat. § 775.082(b)(1).

On remand, the circuit court issued an order granting resentencing and appointing a public defender to represent Kirk at sentencing. Doc. 7-9. On June 13, 2018, the state court held a juvenile resentencing hearing and considered the factors set out in Fla. Stat. § 921.1401(2), including factors related to Kirk's juvenile status. *See* Transcript of Resentencing, Doc. 7-10. Although the resentencing hearing was held in June 2018, the circuit court did not resentence Kirk until more than 2 years later, in December 2020. The circuit court delayed the resentencing because the law in Florida changed again after the resentencing hearing was held.

Specifically, on July 12, 2018, the Florida Supreme Court reversed course in *State v. Michel*, 257 So. 3d 3 (2018). In that case, the court held that a juvenile defendant's life sentence *with* the possibility of parole after 25 years *did not* violate the Eighth Amendment.[4] In light of the *Michel* decision, the State filed a motion to quash the order for resentencing on July 24, 2018, asking the circuit court to reimpose the original sentence or not to modify it.[5] The State also noted that Kirk and the victim's family had actively participated in the parole reviews and, as of the

---

Instead, under this new sentencing scheme, juvenile offenders would be given judicial reviews after a certain time. *See id.*; *see also*, Fla. Stat. § 921.1402.

[4] Because of this change in the law, this Court noted in adopting the now vacated Report and Recommendation that there is "nothing inequitable about this disposition [dismissing the petition as an unauthorized successive petition] because the Florida Supreme Court decision that was the basis for Petitioner's re-sentencing hearing was subsequently overruled." Doc. 11 at 1.

[5] The Secretary did not include the motion to quash in the record or the show cause order, Kirk's response, the court order staying the case, the notice of supplemental authorities, or the circuit court's order denying the motion to quash in the record, referenced in the next two paragraphs. Those documents, however, are available on the Bay County Circuit Court's online docket.

2016 Parole Review, Kirk had a presumptive release date of 2035. In response, the circuit court directed the parties to brief whether and how *Michel* affected Kirk's resentencing. In his response, Kirk argued the court should stay the proceedings until *Michel* becomes final (it was pending a motion for rehearing), *Michel* is not controlling precedent because it is a plurality opinion, and Kirk should be resentenced under Ch. 2014-220 because a sentence with parole violates the Eighth and Fourteenth Amendments and is contrary to the spirit of *Miller*. According to Kirk, his "eligibility for parole does not provide for meaningful opportunity for review and consideration of all relevant factors." On August 8, 2018, the circuit court stayed the proceedings pending final disposition of *Michel*.

*Michel* became final on October 24, 2018, when the Florida Supreme Court denied the motion for rehearing. *See State v. Michel,* 2018 WL 6729935 (Fla. Oct. 24, 2018). Also, one month later, the Florida Supreme Court decided *Franklin v. State*, 258 So. 3d 1239 (Fla. 2018), which officially abrogated *Atwell II*. *See id.* at 1241 (Fla. 2018) (recognizing abrogation of *Atwell II*, because "Florida's statutory parole process fulfills *Graham's* requirement that juveniles be given a 'meaningful opportunity' to be considered for release during their natural life based upon 'normal parole factors.'") (citing *Virginia v. LeBlanc*, 582 U.S. 91, 94-95 (2017)).[6]

---

[6] Because *Michel* was a 3-1-3 plurality opinion, it did not expressly overrule *Atwell II*. *See Santos v. State*, 629 So. 2d 838, 840 (Fla. 1994) (binding precedent is created when four members of the court join in an opinion). The *Franklin* opinion, issued on November 8, 2018, which included four justices, officially overruled *Atwell II*.

Subsequently, the circuit court requested additional briefing and entered an order denying the State's motion to quash, finding that it lacked jurisdiction to rescind its order granting resentencing and appointing counsel. Thus, the circuit court concluded it would proceed with resentencing *and* would do so "with the understanding that it is permitted to reimpose the original sentence of life imprisonment with the possibility of parole if it determines such a sentence to be appropriate."

On December 10, 2020, the circuit court resentenced Kirk on Count I to "life in prison, with the possibility of parole after 25 years."[7] Doc. 7-11 at 24 (oral pronouncement of sentence). The court also stated that "defendant is entitled to a review hearing pursuant to section[s] 775.082(1)(b)1 and 921.1402(2)(a), Florida Statutes." *Id.* at 25. In addition to the oral pronouncement, the Court also issued a 29-page resentencing order explaining its consideration of the sentencing factors under § 921.1401(2). Doc. 7-13 at 21-27. In that resentencing order, the court stated that "Defendant is hereby RESENTENCED on Count I to life in prison with the possibility of parole after twenty-five years," and as it did during the oral

---

[7] The written judgment entered by the circuit court does not reference parole. Instead, it states that Kirk is to be imprisoned for a "term of natural life," "shall serve no less than 25 years in accordance with the provisions of section 775.082(1) Florida Statutes," and "is entitled to a review hearing pursuant to Fl. Statute 775.082(1)(B)2 and 921.1402(2)(C)." Doc. 7-12. However, where a written judgment conflicts with the oral pronouncement, the oral pronouncement controls. *Price-Lawrence v. Lawrence*, 385 So. 3d 171, 174 (Fla. 2nd DCA 2024).

pronouncement, stated that "Defendant is entitled to a REVIEW HEARING pursuant to sections 775.082(1)(b)1 and 921.1402(2)(a), Florida Statutes." *Id.* at 28.

Kirk appealed the judgment and conviction to the First DCA, *see* Case No.: 1D20-3598, arguing the court's determination of the Fla. Stat. § 921.1401(2) factors was not supported by competent, substantial evidence, and the resentencing court abused its discretion by imposing a life sentence with judicial review after twenty-five years. Doc. 7-14 at 35. The First DCA affirmed with a written opinion on May 11, 2022, and denied rehearing on June 20, 2022. *Kirk v. State*, 339 So. 3d 1043 (Fla. 1st DCA 2022), *reh'g denied* (June 20, 2022). The mandate was issued on July 7, 2022. Doc. 7-17.

Kirk filed the instant federal petition on March 17, 2023, raising a single ground that the trial court erred by "resentencing Petitioner who was juvenile at the time of his offense to a life sentence … in violation of the 8th Amendment of the Federal Constitution." Doc. 1 at 4. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition must be filed within one year of final judgment unless another trigger date applies. *See* 28 U.S.C. § 2254(d). Because the resentencing is considered a new judgment,[8] the AEDPA one-year limit began to

---

[8] Because the circuit court designated the resentencing judgment as "nunc pro tunc" to the original judgment, this Court initially dismissed the petition as an unauthorized successive petition. The Court, however, vacated that dismissal after the appellate court determined that Kirk did not need to seek authorization to file the instant petition. *See* Docs. 13, 14.

run ninety days after the First DCA's denial of rehearing on June 20, 2022,[9] on Monday, September 19, 2022. Since Kirk filed the instant petition less than a year later, on March 17, 2023, the petition is timely.

## II.    LEGAL STANDARD

Under the AEDPA, which governs a state prisoner's petition for habeas corpus relief, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, Kirk seeks relief under § 2254(d)(2). Under that subsection, the court "may grant relief only if, in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dept. of Corr.*, 827 F.3d 938, 948 (11th Cir. 2016) (citing *Brumfield v. Cain*, 576 U.S. 305 (2015)).

---

[9] "Under the Supreme Court's rules, the 90-day period for filing a petition for certiorari begins to run from the date of entry of the judgment; and if a timely petition for rehearing is filed and denied, the period begins to run from the date of the denial. Sup. Ct. R. 13.3." *Lowe v. Fla. Dep't of Corr.*, 679 F. App'x 756, 757–58 (11th Cir. 2017).

## III.    DISCUSSION

The Secretary argues Kirk is not entitled to relief because (1) Kirk failed to fairly present the issue as a federal issue before the state courts and thus has failed to exhaust the claim and (2) even if he had a viable federal claim and exhausted it, *Miller* does not apply to Kirk's sentence because he was sentenced to life *with* parole. In his reply, Kirk counters that (1) the claim is exhausted; (2) *Miller* applies because the Florida Commission on Offender Review ("FCOR") f/k/a the Florida Parole Commission has since declined to consider Kirk for parole, thereby turning his life with parole sentence into a life without parole sentence; and (3) the circuit court's application of the facts to *Miller* was unreasonable.

As discussed below, the undersigned finds Kirk has exhausted this claim but is not entitled to habeas relief.  First, the undersigned agrees with the Secretary that *Miller* does not apply to Kirk's sentence.  Second, even if *Miller* applied, the circuit court's application of the facts to the *Miller* factors was not objectively unreasonable.

### A.    Exhaustion

The Secretary's first argument is that Kirk failed to exhaust his Eighth Amendment claim because he couched the claim purely as a matter of state law before the state court.  According to the Secretary, the issues on direct appeal were whether the sentencing judge's findings were supported by competent, substantial evidence and whether the trial court abused its discretion in imposing a life sentence

– issues which call into question the state court's interpretation of state law and fail to implicate any federal law. Doc. 16 at 7. While the Secretary admits that Kirk cited *Miller*, the Secretary characterizes those references as "a few scattered references tangential to federal law." *Id.* at 8. The undersigned disagrees and finds that Kirk fairly presented a federal claim based on *Miller*. Kirk did more than tangentially reference or rely on *Miller*.

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Duncan v. Henry,* 513 U.S. 364, 365 (1995) *(per curiam)* (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To do so, "a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015). However, he must "put the state court on notice that he intend[s] to raise a federal claim … by, for example, 'including ... the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].'" *Id.* (quoting *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012)).

Kirk has certainly provided that notice here. In the initial brief, 3.800 motion, and in his federal petition, Kirk argued the resentencing court's application of the statutory factors adopted by the Florida legislature violated *Miller* and its predecessor, *Graham*. For example, Kirk specifically argued in the second part of his brief that the sentencing court ignored *Miller*:

> The order correctly noted the categorical differences between juvenile offenders and adults, but nonetheless imposed a life sentence despite the evidence of maturity and rehabilitation. (R-2079) The order also correctly noted that Mr. Kirk only had 5 disciplinary reports (DR) from 1984 and 2012 and had gone 18 years without another DR until that point. (R-2079) The only 2 DRs since then were not violent. However, the trial court still imposed a life sentence despite the record showing that Mr. Kirk's record in DOC is precisely what *Miller* envisioned: he has demonstrated maturity and rehabilitation since the offense he committed as a juvenile decades ago.

Doc. 7-14 at 49. Thus, Kirk has exhausted this claim. As discussed in the next section, however, the problem for Kirk is that *Miller* does not apply to his sentence.

## B.  *Miller* Does Not Apply to Kirk's Sentence

In *Miller*, the Supreme Court held that "mandatory life *without* parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments'" because it makes "youth (and all that accompanies it) irrelevant." *Id.* at 479. Specifically, the Supreme Court held that a court must consider certain mitigating factors related to the defendant's juvenile status when sentencing a defendant to life without the possibility of parole for homicide offenses. *Id.* at 477-81 (noting that a mandatory life without parole

sentence precludes consideration of defendant's chronological age and its hallmark features, such as immaturity, impetuosity, and failure to appreciate risks and consequences, and also fails to take into consideration the defendant's family and home environment, including peer pressures). The *Miller* decision was a logical extension of the Supreme Court's decisions in *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth Amendment prohibits capital punishment for murderers who are under 18 when the crime is committed) and *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Eighth Amendment prohibits life without parole sentences for offenders who are under 18 when they commit nonhomicide offenses). *See Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016) (holding that *Miller* applies retroactively to cases on collateral review and recognizing the "'foundation stone' for *Miller*'s analysis was this Court's line of precedent holding certain punishments disproportionate when applied to juveniles").

As discussed in Section I, above, in an oral pronouncement and written sentencing order, the circuit court resentenced Kirk to a life *with* parole sentence and a review hearing under Florida Statute §§ 775.082(1)(b)1 and 921.1402(2)(a). Because this sentence is not a mandatory life without parole sentence, *Miller* does not apply. "*Miller* requires a trial judge to consider mitigating factors related to youth before sentencing a defendant, who commits a crime when he is a juvenile, to life in prison **without** parole." *Sweet v. Sec'y, Dept. of Corr.*, 2023 WL 5830434, at

*3 (M.D. Fla. Sept. 8, 2023) (emphasis added). *Miller* says nothing about life with parole sentences.

The Supreme Court has never held that a life with parole sentence violates the Eighth Amendment. *See Jones v. Mississippi*, 593 U.S. 98, 105 (2021) ("In a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient."). Likewise, the Supreme Court has never held that a court must consider juvenile-related factors before sentencing a juvenile to a life *with* parole sentence.[10] *See id.* Moreover, in *Montgomery,* the Court specifically recognized that a State could remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. *See Montgomery,* 577 U.S. at 212 ("Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."). Thus, because the circuit court did not sentence Kirk to a mandatory life without parole sentence, *Miller* does not apply to Kirk's sentence.

---

[10] Indeed, the *Miller* Court specifically declined to impose a categorical ban even on life without parole sentences for juvenile offenders. *See id.* at 106 ("[I]n *Miller* in 2012, the Court allowed life-without-parole sentences for defendants who committed *homicide* when they were under 18, but only so long as the sentence is not mandatory—that is, only so long as the sentencer has discretion to 'consider the mitigating qualities of youth' and impose a lesser punishment.").

In his Reply, Kirk argues for the first time that his sentence violates *Miller* because the FCOR has refused to consider him for parole, thus turning his sentence into one that is a *de facto* life *without* parole sentence.[11]  Doc. 20-1 at 5.  The State did not seek an opportunity to file a response to the Reply.[12]  Nonetheless, the undersigned finds Kirk's argument to be flawed.[13]

Regardless of whether Kirk will get the benefit of a parole review, the circuit court made clear that Kirk shall have a sentence review at 25 years, which review has already been granted and is set for December 2024.  Therefore, even if the state courts determine that the circuit court should not have sentenced Kirk to life with

[11] Based on the documents attached to the Reply, on March 6, 2023, the FCOR vacated its December 1, 2021, Committee Action, which made no change to Kirk's presumptive parole release date ("PPRD") of August 18, 2037, and "close[d] interest" in Kirk's case, meaning they would no longer consider him for parole.  *See* Doc. 20-1 at 5, 14.  Kirk filed a petition for writ of mandamus with the circuit court asking the court to require the FCOR to provide written reasons for its March 2023 actions as required by Florida Administrative Code Rules 23-21.0155(1) and 23-21.015(4).  According to the FCOR's Response to the Petition for Writ of Mandamus, the FCOR closed its interest in Kirk's case because Kirk chose to be resentenced under Fla. Stat. §§ 775.082(1)(b), 921.1401, and 921.1402, which, at the time of sentencing do not provide for parole eligibility, and the circuit court cannot provide parole to a defendant where the legislature has not.  The circuit court denied the petition, finding the FCOR did not need to provide written reasons for its March 2023 actions, and Kirk has appealed that denial to the First DCA, which matter remains pending.  *See* Case No. 1D2024-0274.

[12] It appears the Secretary may not have been aware of the FCOR's decision because in his Answer to the petition, the Secretary states, "Petitioner has two avenues before the sentencing court and administratively in regularly scheduled reviews before the [FCOR] to prove his 'crimes reflected only transient immaturity - … [he has] since matured' and his rehabilitation."  Doc. 16 at 14 (citing *Montgomery*, 577 U.S. at 212).

[13] Although it is dubious that a petitioner can wait until his memorandum in opposition to the state's response to fully present his federal claims, *cf. Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir. 2003) (refusing to consider arguments presented for the first time in a reply brief), the undersigned assumes without deciding that Kirk did not waive his claim by failing to present it as a matter of federal due process in his federal habeas petition.  *See Preston v. Sec'y, Fla. Dep't of Corr.,* 785 F.3d 449, 457 (11th Cir. 2015).

parole (as parole is not available under Fla. Stat. §§ 775.082(1)(b), 921.1401, and 921.1402), there is no dispute that Kirk will get the benefit of a review.  *See fn.* 11, *supra; see also, Sweet,* 2023 WL 5830434, at *14 (holding that while a life sentence with the possibility of parole after 25 years is an "improper" sentence for a juvenile offender resentenced under *Miller*, the "appropriate remedy" is not a resentencing hearing but an amendment to the sentence to provide judicial review after 25 years).[14]  Notably, Kirk does not discuss the 25-year review in his Reply.  In other words, regardless of whether Kirk will be entitled to a parole review, a judicial review, or both,[15] his sentence is not a mandatory life without parole sentence, and is not "irrevocable" because either the FCOR or the circuit court during the review, or both, will "have the ability to consider the 'mitigating qualities of youth.'"  *Miller*, 567 U.S. at 476 (quoting *Graham*).  Therefore, the fact that the FCOR has closed its interest in Kirk's case is inconsequential to this Court's determination regarding whether *Miller* applies to Kirk's sentence.

---

[14] The defendant in *Sweet* was resentenced in March 2014, prior to the enactment of Fla. Stat. § 921.1401.  Nonetheless, the resentencing court provided Sweet with an individualized hearing and considered mitigating factors, including those set forth in Fla. Stat. 921.0026 and 921.141.

[15] In the circuit court's resentencing order, the court stated it could consider the § 921.1401 factors while still applying the law in effect when the offense was committed and could "reimpose the original sentence of life imprisonment with the possibility of parole if it determines such a sentence to be appropriate."  Doc. 7-13 at 20.  Despite resentencing Kirk to the original sentence, the court also included the 25-year review from § 921.1402 and, as the Secretary noted, it appears the circuit court intended to give Kirk both avenues of review because, in its resentencing order, the court specifically stated that, "[n]othing in this Order should be construed as a limitation on the Defendant's parole eligibility prior to the date of the scheduled judicial review."  Doc. 7-13 at 28.

**C.    The Sentencing Court Considered the *Miller* Factors and Its Application to the Facts was not Unreasonable**

Finally, even if *Miller* applied to Kirk's sentence, the circuit court's determination of the factors attendant to Kirk's youth when he committed the offense was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2).

As an initial matter, under § 2254(d)(2) the circuit court's factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)) (alteration adopted) ("We may not characterize ... state-court factual determinations as unreasonable 'merely because we would have reached a different conclusion in the first instance.'"). District courts presume that the state court's factual determinations are correct, absent clear and convincing evidence to the contrary. *Pye v. Warden, Ga. Diag. Pris.*, 50 F.4th 1025, 1035 (11th Cir. 2022); 28 U.S.C. § 2254 (e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Moreover, "*Miller* did not impose a formal factfinding requirement." *Jones*, 593 U.S. at 106. It does not require "some kind of sentencing explanation." *Id.* at 116. Instead, "*Miller* mandated 'only that a sentencer follow a certain process – considering an offender's youth and attendant characteristics – before imposing' a

life-without-parole sentence." *Id.* at 106. While *Miller* requires sentencing courts to employ a procedure that includes individualized consideration of mitigating circumstances, the sentencing court nonetheless has wide discretion in determining "the weight to be given relevant mitigating evidence." *Id.* at 108. In other words, the *Miller* Court prohibited *mandatory* life without parole sentences that took away a court's discretion to consider a defendant's youth. *Id.*

Florida Statute § 921.1401 sets forth the discretionary procedure for resentencing juvenile defendants whose original sentences violate the Supreme Court's directives in *Miller* and *Graham*. Subsection 2 of that statute sets forth 10 nonexclusive factors a court shall consider in determining whether life imprisonment or a term of years is an appropriate sentence. Factors (c), (e), (g), (i) and (j) specifically address a defendant's juvenile status. *See Miller*, 567 U.S. at 471 (explaining that the problem with a mandatory life without parole regime is that it (1) fails to allow individualized consideration of "hallmark features" of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) fails to consider the juvenile's family and home environment; and (3) neglects the circumstances of the homicide offense, including the family and peer pressures).

Considering the directives in *Miller*, and the substantial deference to be accorded to the circuit court's factual determinations, the undersigned easily finds

(as did the First DCA) that the circuit court did not unreasonably apply the *Miller* factors to the evidence presented.

Although it did not have to do so, the circuit court provided a detailed explanation of each factor outlined in § 921.1401.[16]   The court, for example, considered Kirk's age when he committed the offense, his limited IQ, and his limited formal education.   The court, however, did not find those factors to be mitigating when considering Kirk's ability to take care of himself, his street savviness, and the lack of evidence of any mental deficiencies.   Doc. 7-13 at 22.   The court also considered Kirk's background and noted that little about Kirk's background can be considered positive.   *Id.*   The court discussed Kirk's use of marijuana, beginning at age 8, the violence in his home, the fact that Kirk turned to the streets, where he met co-defendant Gillespie, who while providing him with basic necessities, did so in exchange for his participation in illicit activities.   The court considered these factors and determined they weighed in favor of mitigation.   *Id.* at 23.   The court also considered Kirk's immaturity and the impetuousness of the murder.   While the court acknowledged Kirk was immature, having a maturity level no greater than that of a 15-year-old, the court also noted that the crime was not impetuous because Kirk had time (during a 20-minute walk to the convenience store) to reflect on the decision to commit the robbery and, given his experience on the streets, knew the risks of pulling

---

[16] Although the circuit court discussed all the § 921.1401 factors, this report and recommendation focuses on the juvenile-related factors.

the trigger, and nonetheless chose to shoot the victim twice, when Gillespie was attempting to leave the store.  The court, thus, found this factor to "weigh heavily" against mitigation.  *Id.* at 23.

The circuit court considered whether there was any familial pressure on Kirk to commit the crime, and correctly concluded there was not.  The court also concluded that any "coercion" or peer pressure asserted by Gillespie was limited to the robbery and did not extend to the murder.  *Id.* at 24.  The court considered the effect of Kirk's youth on his judgment and concluded it "played a certain negative role with regard to his judgment on the day of the offense."  *Id.* at 25.  Nonetheless, the court concluded that given Kirk's background, namely his first-hand knowledge of the effect of violence and the loss of life, he should have had "at least a brief moment of pause before he pulled the trigger."  *Id.*  Finally, the court considered the possibility of rehabilitation and noted that Kirk has received his GED and participated in other programs and training while in prison.  Thus, the court afforded "some positive weight" to this factor.  *Id.*

As the First DCA noted, while Kirk may argue the circuit court failed to consider certain evidence or factors, it did not.  Instead, Kirk's real issue is with the weight the circuit court assigned to the evidence and factors presented.  *See Kirk,* 339 So. 3d at 1047.  Kirk also relies heavily on his own testimony, for example of why he had a gun, whether he has accepted responsibility, and whether his story changed over time.  Credibility determinations, however, are accorded great

deference on habeas review. *See Rice v. Collins*, 546 U.S. 333, 342 (2006). Given the circuit court's thorough discussion of the facts attendant to Kirk's youth, the undersigned finds that Kirk has failed to present clear and convincing evidence that no reasonable jurist would agree with the circuit court's determinations.[17]

The *Miller* Court did not circumscribe a sentencing court's discretion in determining an appropriate sentence. Instead, as the *Miller* Court recognized, "some sentencers may decide that a defendant's youth supports a sentence less than life without parole," while others "presented with the same facts might decide that life without parole remains appropriate despite the defendant's youth." *Id.* at 115. Thus, regardless of whether Kirk, this Court, or another court would have reached a different sentencing decision, it cannot be reasonably disputed that the circuit court considered the *Miller* factors and did not unreasonably apply them to the facts of the case. Kirk is not entitled to relief.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether

---

[17] In a concurring opinion, Judge Makar noted that "the trial judge's nearly thirty-page single-spaced resentencing order thoroughly details the court's factual findings and exhaustively analyzes each of the statutory factors in light of caselaw developments thereby clearly explaining the basis for his decision and greatly assisting appellate review, all of which is commendable and to be emulated." *Kirk*, 339 So. 3d at 1049.

such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Additionally, this Court must consider the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id*.

### B.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

Accordingly, it is RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the resentencing

order in *State v. Kirk*, Bay County, Florida, Case Number 1983-CF-988, Doc. 1, be

DENIED without an evidentiary hearing.

    2.      That a certificate of appealability be DENIED.

    3.      That the clerk be directed to close the file.

    At Pensacola, Florida, this 11th day of October, 2024.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.